No. 3602

Second Circuit

CHRISTIAN v. LANGFORD

MAHFOUZ AND WINKLER, Interevenors

(November 18, 1929. Opinion and Decree.)

Parsons and Colvin, of Mansfield, attorneys for plaintiff, appellee.

Pegues & Pegues, of Mansfield, attorneys for intervener, Bert Winkler, appellant.

W. M. Pollock, of Mansfield, attorney for Joe and T. Mahfouz, interveners and appellants.

ODOM, J. Plaintiff sued defendant to recover an indebtedness of $579.47, and had his property attached on the grounds set out in paragraphs 4 and 5 of article 240 of the Code of Practice. The sheriff, according to his returns, attached, along with other property on April 6th, "74 peeled, pine pilings, located on the right-of-way of the Texas & Pacific Railway at South Mansfield, Louisiana," as the property of defendant.

Joe and T. Mahfouz intervened in the suit, claiming a privilege on the piling by virtue of a chattel mortgage thereon executed previous to the attachment. Bert Winkler also intervened, claiming a privilege on the same piling, under Act 195 of 1912, which creates a privilege on telegraph and telephone poles and cross-ties and the timber out of which the same are manufactured in favor of those who have furnished the stumpage, and for those who have furnished labor and other advances for getting out such poles, ties, etc.

There was judgment in the district court in favor of the plaintiff, maintaining the writ of attachment. From this judgment, defendant did not appeal. The court also granted judgment in favor of both interveners, against the defendant Langford for the amount sued for, but rejected their demands for recognition of their alleged privileges, and they have appealed.

INTERVENTION OF MAHFOUZ.

On March 31st, just prior to the date on which the writ of attachment was served, the defendant, Langford, made a chattel mortgage in favor of Joe and T. Mahfouz, covering the following described property:

"Seventy (70) 14-inch varied length pole pilings, situated on the right-of-way of the Texas & Pacific Railroad at South Mansfield, De Soto Parish, Louisiana."

The district judge filed no written opinion setting forth his reasons for rejecting interveners' claims to a privilege, but counsel state in their brief that the judge "held that the description of the property described in the chattel mortgage was not a sufficient description to identify the pilings in question," and they state further that this is the sole question presented for our consideration.

In view of section 2, Act 198 of 1918, the Chattel Mortgage Law, reciting that every such mortgage "shall be in writing, setting out a full description of said property to be mortgaged so that same may be identified," we hold that the judgment appealed from is correct.

The requirement under this statute is that the mortgage shall contain a "full description" of the property, "so that the same may be identified." There was no full description of these pole pilings. They are described as "14-inch pole pilings."

That is as far as the description goes. They are said to be of varied lengths. It is not stated whether they were all of pine, oak or cypress timber, whether they were old or new, or whether the bark was still on them or peeled off. A description, "14-inch varied length pole pilings" is no more definite than one describing cattle as so many four-year-old cows of various colors, or so many red cows of various sizes. Nor does the recital as to the place where situated help the description in this case. It is recited that they were situated "on the right-of-way of the Texas & Pacific Railway at South Mansfield, De Soto Parish, Louisiana." There is no place on the right-of-way suggested. The Texas & Pacific Railroad may run for a full mile or more through South Mansfield. The poles intended to be mortgaged may have been scattered along the right-of-way all through the town, all on one side, some on each side, or they may have been stacked in piles of five, ten or twenty poles each, or all together. There is nothing to show, nor is there anything to suggest that the mortgagor did not own other pole pilings than those intended to be mortgaged. As a matter of fact, there is testimony in the record admitted on another branch of the case which shows that he did own other poles there. Then, how could a third person identify the particular seventy poles which the defendant intended to mortgage? Or assuming that there were 14-inch pole pilings on the right-of-way belonging to other persons, how could a third person point out those belonging to the mortgagor?

Counsel, in support of their contention that the description in this case is sufficient, cite the case of Commercial Bank of Arcadia vs. Simmonds (Bryan, third opponent), 2 La. App. 658, decided by us in 1925, in which case the late Judge Carver was the organ of the court, where it was said:

"Our understanding of Section 2, (referring to Act 198 of 1918) as copied above, is that it is not necessary that the chattel mortgage should contain such a description of the mortgaged property as will itself identify it, but it is sufficient if the description is such as that it may be identified; that is to say, anyone reading it may from the description contained in the act together with information derived from inquiries suggested by it, be able to identify it."

Without reaffirming that particular holding and without here giving further specific sanction to it, but assuming that it is sound, the case does not support interveners' contention.

The property there mortgaged was live stock and the description in the mortgage was as follows:

"Two mare mules of medium size weighing respectively about 900 or 1000 lbs, each about 5 years old the heavier mule being a dark bay and the lighter being a light bay in color, and the 2 mare mules about 6 years old weighing between 1000 and 1100 lbs. both black, one bay mare about 10 years old named Lieu weighing about 950 lbs. with white spots in her face."

In that case, the sex, approximate size and weight, age and color of the animals were specified. That description is about as definite as it could have been, the only thing left out which might have been stated was the place where the animals were located. The difference between that description and the one under consideration as to being definite is manifest. In the case at bar, the property is described as so many "14-inch pole pilings" situated on the right-ofway of a railroad. If a third person had read the description in the act of mortgage and had gone out to locate or

identify the pilings, he could not have done so because there might have been others of the same kind. The description is wholly inadequate in view of the particular and specific wording of our Chattel Mortgage Law.

Durel vs. Buchanan, 147 La. 804, 86 So. 189;

Cont. Bank & Trust Co. vs. Succ. of McCann, 151 La. 555, 92 So. 55, 56.

In the latter case, the court said:

"It is clear that the full description sufficient to identify the property and serve as notice to all parties should appear in the written instrument itself, so that when recorded, it will serve the purpose intended by the statute."

INTERVENTION OF BERT WINKLER.

This intervener, representing himself and others, claims a privilege on the pole pilings for stumpage and labor, under Act 195 of 1912, page 382.

A reading of that act discloses that the privilege granted is only upon telegraph and telephone poles and cross-ties, and the timber out of which the same are manufactured. But these interveners are claiming a privilege on "pole pilings" which are not mentioned in the act and we are not referred to any other law under which they might have a privilege. Privileges are stricti juris. Unless they are granted by some specific law, they do not exist and cannot be granted. The district judge may have rejected interveners' demands for recognition of a privilege on this account. However, from the trend of counsels' brief, we infer that the court was of the opinion that these litigants failed to identify the poles. Our reading of the record discloses that the one who claimed to have furnished the stumpage, as well as those who claimed to have performed the labor and furnished the supplies to make and haul them, utterly failed to identify the poles attached. One of the interveners claimed that he loaded all the poles, presumably when they were shipped out. Even if it be conceded that Act 195 of 1912 should be so construed as to include pole pilings, this party would have no privilege because none is granted to those who load them.

The judgment appealed from is correct and is therefore affirmed, with costs in both courts.