82 So.2d 105 (1955)
H. Gordon HAMNER, Jr., Plaintiff (Defendant in Third Opposition) Appellant,
v.
Louis A. DOMINGUE, d/b/a Domingue's Auto Sales, Defendant, Luke Hernandez & Avery Hernandez, Third Opponent-Appellee.
No. 4074.
Court of Appeal of Louisiana, First Circuit.
June 30, 1955.
Rehearing Denied September 15, 1955.
Writ of Certiorari Denied November 7, 1955.
Pugh & Boudreaux, Lafayette, for appellant.
*106 Voorhies & Labbe, Lafayette, for appellee.
TATE, Judge.
This appeal is from a judgment sustaining the third opposition filed by Luke Hernandez claiming ownership of a car seized under a judgment rendered in the original suit herein of H. Gordon Hamner, Jr. v. Louis A. Domingue. Avery Hernandez also appears as a third opponent claiming to hold a valid first mortgage on the vehicle involved, executed in his favor by Luke Hernandez.
In the original suit, Gordon Hamner, plaintiff, brought an action against Louis Domingue, d/b/a Domingue's Auto Sales, seeking judgment in the amount of $3,750 and to have a chattel mortgage executed by Domingue of date August 19th, 1953 affecting three passenger automobiles recognized. Among the three automobiles included in this chattel mortgage was a 1953 Plymouth automobile "bearing Serial No. S-20634100 and Motor No. P-24-536850". (Italicized "3" ours.)
From the record, it appears that this was intended to describe the 1953 Plymouth automobile involved herein.
However, this was the incorrect motor number of said vehicle, the correct motor number being: P-24-506850. This Plymouth automobile was seized subsequent to judgment while in the possession of Luke Hernandez, whereupon the latter and his mortgage creditor filed a third opposition to set aside the seizure insofar as affecting this car.
The record reflects that Luke Hernandez purchased the vehicle in question on August 22nd, 1953, for $1756.00 cash, borrowed from his father, Avery Hernandez, to whom he on that same date executed a first chattel mortgage thereupon. The bill of sale by which he purchased said Plymouth automobile describes it correctly as to motor number, as does the chattel mortgage to the older Hernandez. The sale and chattel mortgage were within the next two or three days duly registered with the Motor Vehicle Division, following which Certificate of Title No. 522905 was issued to Luke Hernandez dated September 2nd, 1953, showing no encumbrance affecting said automobile except the aforesaid chattel mortgage in favor of his father.
The able District Court rendered judgment in favor of third opponents, recognizing Luke Hernandez as the owner of the Plymouth and recognizing the mortgage executed by him to the senior Hernandez to secure the purchase price. It further held invalid plaintiff's mortgage insofar as affecting this vehicle because Louis Domingue had not owned the vehicle at the time it was mortgaged or at any time thereafter.
Counsel for plaintiff-appellant (defendant in the third opposition) ingeniously and skillfully advances many reasons, factual and legal, in support of his position that Domingue was the owner of the vehicle and executed a valid chattel mortgage thereupon which plaintiff seeks to have recognized and enforced.
However, it is unnecessary to discuss whether Domingue (rather than Dupuis, from whom third opponent alleges he purchased the vehicle) was the owner of the vehicle at the time he gave the mortgage, although we believe the District Court's factual conclusion that Domingue was not, supported by the record. Equally unnecessary is it to discuss whether by virtue of the automobile being left on his lot by the true owner (Dupuis), Domingue's mortgage to plaintiff would be valid as against the true owner even if Domingue did not own the car.
For any privilege in favor of plaintiff must necessarily result from Domingue's execution of the chattel mortgage attempting to include this automobile, and its effect as against third persons claiming whether from Domingue or Dupuis. In this connection, the crucial fact of importance in our estimation is that the chattel mortgage executed by Domingue allegedly affecting this vehicle, insufficiently and incorrectly described it by erroneous motor number, so that a third party such as Hernandez purchasing *107 the vehicle from Domingue and relying on the public records could not have Any such third party would find recorded in Any such third party would find recorded in the public records no mortgage by Domingue affecting a Plymouth with the motor number actually found on the motor of the vehicle purchased or as shown on the bill of sale evidencing said purchase; although he would find a mortgage (and possibly several, Domingue being a car dealer) affecting Plymouth(s) of the same model but with different motor number (s). (The correct serial number, as distinguished from the motor number, was shown on appellant's mortgage; but the evidence indicates that indexing by the Motor Vehicle Commission is by motor number, not serial number.)
The Vehicle Certificate of Title Law, LSA-R.S. 32:701 et seq., provides since 1952 the "sole and exclusive method of executing and recording chattel mortgages" affecting motor vehicles, LSA-R.S. 32:710. One of the mandatory requirements of a chattel mortgage executed under this Act is that it must contain the motor number, LSA-R.S. 32:710, subd. A(5). We specifically do not pass on whether this mandatory requirement must be met to validate a mortgage between the parties, but even under the Chattel Mortgage Act, not containing a statutory requirement that the motor number shall be set forth, see LSA-R.S. 9:5352, it was consistently held that third parties cannot be held to notice of or affected by chattel mortgages of motor vehicles recorded containing incorrect motor numbers; Valley Securities Co., Inc. v. De Roussel, 16 La. App. 115, 133 So. 405; Exchange National Bank v. Palace Car Co., 1 La.App. 307. See also Valley Securities Co., Inc., v. Stafford, 8 La.App. 607; In re Ratcliff, D.C., 2 F.Supp. 193.
Alternatively, appellant urges that Dupuis could not transfer valid title to Hernandez because Dupuis himself did not have valid title since he did not apply for a title certificate within five days of his own purchase as required by LSA-R.S. 32:707, or in fact obtain any title certificate in his (Dupuis') name whatsoever as required by LSA-R.S. 32:705. Appellant calls our attention to LSA-R.S. 32:706 which provides: "No person buying a vehicle * * * shall acquire a marketable title in or to said vehicle until the purchaser shall have obtained a certificate of title to said vehicle."
In view of what we have said above, we do not believe appellant's position would be improved if this contention were upheld. Further, our courts have already held that failure to comply with the administrative regulations above set forth as to registration of the sale of motor vehicles, does not invalidate the sales themselves. Bedsole v. Lee, La.App., 1 Cir., 78 So.2d 434; Transportation Equipment Co., Inc., v. Dabdoub, La.App., 69 So.2d 640.
LSA-R.S. 32:706, quoted in part above, does not provide that no valid title shall be perfected until the purchaser obtains a title certificate, but that no marketable title shall be perfected until that time. The term "marketable title" does not connote that the vendor cannot sell, but that he cannot enforce an agreement to buy, in absence of same, Words & Phrases (Perm. Edition), Volume 26A, pp. 35-55, Verbo "Marketable Title". Thus third-opponent Hernandez could not have enforced the agreement of another to purchase his car until he had received his certificate of title on September 2, 1953. But on receiving said certificate, Hernandez not only had a good and valid title, but also a "marketable" title to said car.
If, as appellant urges, he acted to his detriment because of some act or declaration, of Dupuis, it is difficult to see how any estoppel possibly affecting Dupuis in an' action between appellant and Dupuis, could affect third opponent whom the record, indicates to be a purchaser in good faith from Dupuis.
Appellant further urges that by this third opposition third opponents seek to annul the judgment herein recognizing and declaring valid appellant's mortgage against Domingue, in which judgment the correct motor number of the vehicle was set forth.
*108 It is sufficient to remark that third opponents were not parties to those proceedings and were not bound thereby. This is not an action of nullity instituted by one who was an original defendant under Article 605 et seq., Code of Practice, but a third opposition filed by third parties not made party to the original suit, claiming ownership and a privilege, as specifically authorized by Article 396, C.P.
For the reasons assigned the judgment of the lower court herein is affirmed at appellant's cost.
Affirmed.